# EXHIBIT A

Multistate

# NOTE

FHA Case No.

**AUGUST 11, 1999**

**91-04 175TH STREET, JAMAICA, NEW YORK 11432**

[Property Address]

### 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means **BLAIR SERVICES OF AMERICA,INC.dbaWHITMAN MORTGAGEE**

and its successors and assigns.

### 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the  principal sum of
**ONE HUNDRED SEVENTY THOUSAND AND 00/100- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - --**
**- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - · · · · ·**
Dollars (U.S. $   **170,000.00**        ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of   **EIGHT AND 500/1000**                 percent (      **8.50000**%) per year until the full amount of principal has been paid.

### 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and  called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

### 4. MANNER OF PAYMENT

**(A) Time**

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on **OCTOBER 01, 1999**      . Any principal and interest remaining on the first day of   **SEPTEMBER 01, 2029**        , will be due on that date, which is called the maturity date.

**(B) Place**

Payment shall be made at  **1121 OLD WALT WHITMAN ROAD, SUITE 300**
**MELLVILLE, NEW YORK 11747**                                              or at such other place as Lender may designate in writing by notice to Borrower.

**(C) Amount**

Each monthly payment of principal and interest will be in the amount of U.S. $   **1,307.16**        . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

**(D) Allonge to this note for payment adjustments**

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box.]

[ ]  Graduated Payment Allonge        [  ]  Growing Equity Allonge        [ ]  Other(s) [specify]

### 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month.  Lender shall accept  prepayment on other days provided that Borrower pays interest on the amount prepaid  for the remainder of the month to the extent required by Lender and permitted  by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

### 6. BORROWER'S FAILURE TO PAY

**(A) Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of **FOUR AND 000/J000**              percent (      **4.000** %) of the overdue amount of each payment.

**(B) Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults.  This Note does not authorize acceleration when not permitted by HUD regulations.  As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorney's fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest  from the date of disbursement at the same rate as the principal of this Note.

**FHA Multistate Fixed Rate Note (06/96)**



### 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

### 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

### 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_Premlall Nandkishur_ _____ (Seal)
PREMLALL NANDKISHUR                              -Borrower

PAY TO THE ORDER OF
FLEET MORTGAGE CORP.
WITHOUT RECOURSE
BLAIR SERVICES OF AMERICA INC.
D/B/A WHITMAN MORTGAGEE
BY _Frank B. Wigley_                             _____ (Seal)
FRANK B. WIGLEY, PRESIDENT                        -Borrower

                                                 _____ (Seal)
                                                  -Borrower

                                                 _____ (Seal)
Pay to the order of _____        -Borrower

Without Recourse
Fleet Mortgage Corp.

By _William Beard_
WILLIAM BEARD
Document Executing Officer

REEL 5 3 7 6 PG 1 6 90

## CITY REGISTER RECORDING AND ENDORSEMENT PAGE
## - QUEENS COUNTY -
### (This page forms part of the instrument)

Block(s): 9809

Lot(s): ~~

Title/Agent Company Name: _Triborough_

Title Company Number

RECORD &
RETURN TO:

NAME ▼
_Blair Services of America_
ADDRESS ▼
_112 Old Walt Whitman Rd._
CITY ▼            STATE ▼       ZIP ▼
_Melville      NY    11747_

---

### OFFICE USE ONLY        DO NOT WRITE BELOW THIS LINE
#### THE FOREGOING INSTRUMENT WAS ENDORSED FOR THE RECORD AS FOLLOWS:

Examined by (✓): _CH 8 30 99_

Mtge Tax Serial No.: _022523_

Mtge Amount ..... $ _121000_

Taxable Amount ..... $

Exemption (✓) ..... YES ☐  NO ☐

Type: _____ [ ____ ]  [ 2&3 ]  [ OTHER _____ ]

Dwelling Type: [ 1 & 2 ]  [ 3 ]  [ 4 & 6 ]  [ OVER 6 ]

TAX RECEIVED ON ABOVE MORTGAGE ▼

| | |
|---|---|
| County (basic) ..... $ | _800_ |
| City (Add'l) ..... $ | _1200_ |
| Spec Add'l ..... $ | |
| TASF ..... $ | _125_ |
| MTA ..... $ | _400_ |
| NYCTA ..... $ | |
| TOTAL TAX ..... $ | _3375_ |

Additional Mortgage (✓)  YES ☐  NO ☐

Joy A. Embree, City Register

City Register
Serial Number ➡

**090672**

Indexed
By (✓): _JB_        Verified
                    By (✓):

Block(s) and Lot(s) verified by (✓):
Address ..... ☐ ___    Tax Map ..... ☐
Extra Block(s) _____    Lot(s) _____

Recording Fee ..... $
Affidavit Fee ..... (C) $
TP-584/582 Fee ..... (Y) $
RPTT Fee ..... (R) $

HPD-A ☐           HPD-C ☐

New York State Real Estate Transfer Tax ▼
$
Serial
Number ➡

New York City Real
Property Transfer Tax
Serial Number ➡

New York State
Gains Tax
Serial Number ➡

MORT 0674            $7.60
LO/TL  CSHR  RECPT  DATE   TIME
-1     T           Sep 15-99 13:01

MTGE TAX 0675        3,375.00
LO/TL  CSHR  RECPT  DATE   TIME
-1     T           Sep 15-99 13:01

---

### RECORDED IN QUEENS COUNTY
### OFFICE OF THE CITY REGISTER

1999 SEP 15  P 1: 53

Witness My Hand and Official Seal

City Register



REEL 5 3 7 4 PG I 6 8 3

RECORD AND RETURN TO:
BLAIR SERVICES OF AMERICA,INC.dbaWHITMAN MORTGAGEE
1121 OLD WALT WHITMAN ROAD, SUITE 300
MELLVILLE, NEW YORK 11747

--------------------[Space Above This Line For Recording Data]--------------------

State of New York

FHA Case No.

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on  AUGUST 11, 1999                . The Mortgagor is
PREMLALL NANDKISHUR

whose address is  91-04 175TH STREET,
JAMAICA, NEW YORK 11432                                    ("Borrower"). This Security Instrument is given to
BLAIR SERVICES OF AMERICA,INC.dbaWHITMAN MORTGAGEE
                                                                    , which is organized and
existing under the laws of   STATE OF NEW YORK              , and whose address is
1121 OLD WALT WHITMAN ROAD, SUITE 300, MELLVILLE, NEW YORK 11747
                                                ("Lender"). Borrower owes Lender the principal sum of
ONE HUNDRED SEVENTY THOUSAND AND 00/100 - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Dollars (U.S. $     170,000.00         ). This debt is evidenced by Borrower's note dated the same date as this Security
Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on
SEPTEMBER 01, 2029            . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced
by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums,
with interest, advanced under Paragraph 7 to protect the security of this Security Instrument; and (c) the performance of
Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby
mortgage, grant and convey to Lender, with power of sale, the following described property located in
QUEENS                  County, New York:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF. BLOCK:   9809
    LOT:   64

THIS PROPERTY IS IMPROVED BY A
ONE OR TWO FAMILY DWELLING ONLY

FHA New York Mortgage   (06/96)

00NY : 02/97                            Page 1 of 6                      PN

REEL 5 3 7 4 PG 1 6 8 4

# TRIBOROUGH ABSTRACT INC.

Title No. ███████

## SCHEDULE A - DESCRIPTION

All that certain plot, piece or parcel of land, situate, lying and being in the Borough and County of Queens, City and State of New York, known nd designated on a certain map entitled "Property at Eastwood, 4th Ward, Borough of Queens, Nov. 1907 by George H. Gifford" and filed in the Office of the Clerk (now Register) of the County of Queens on 12/1 8/07 as Map No. 587 as and by lots numbered 1 and 2 and part of 3 which said lots and part of lot are more particularly bounded and described according to said map as follows:

BEGINNING at the corner formed by the intersection of the Southerly side of 91st Avenue (formerly St. Albans Place) with the Westerly side of 175th Street (formerly Warwick Boulevard);

RUNNING THENCE Westerly along the Southerly side of 91st Avenue 117 feet;

THENCE Southerly parallel with 175th Street 51.25 feet;

THENCE Easterly parallel with 91st Avenue, 117 feet to the Westerly side of 175th Street;

THENCE Northerly along the Westerly side of 175th Street 51.25 feet to the corner, the point or place of BEGINNING.

SCHEDULE A - DESCRIPTION PAGE

REEL 5 3 74 PG 1 685

which has the address of   **91-04 175TH STREET**
                                          [Street]

          **JAMAICA**              ,        **NEW YORK**          **11432**          ("Property Address");
              [City]                                  [State]                    [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.  **Payment of Principal, Interest and Late Charge.**  Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2.  **Monthly Payment of Taxes, Insurance, and Other Charges.**  Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under Paragraph 4.  In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3.  **Application of Payments.**  All payments under Paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4.  **Fire, Flood and Other Hazard Insurance.**  Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires.  Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender.  The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in Paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in Paragraph 2, or change the amount of such payments.

HD07 : 02/97                                Page 2 of 6

REEL 5 3 7 4 PG 1 6 8 6

Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in Paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in Paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

REEL 5374 PG 1687

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within    90 DAYS              from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 90 DAYS                        from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of Paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that the Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this Paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this Paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

HUD04 · 02/97                                                    Page 4 of 6

REEL 5 3 7 4 PG 1 6 8 8

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. **Foreclosure Procedure. If Lender requires immediate payment in full under Paragraph 9, Lender may bring a lawsuit to take away all of Borrower's remaining rights in the Property and have the Property sold. At this sale Lender or another person may acquire the Property. This is known as "foreclosure and sale." In any lawsuit for foreclosure and sale, Lender will have the right to collect all costs allowed by law. These costs include reasonable attorneys' fees and costs of title evidence.**

Lender may require immediate payment in full under Paragraph 9 only if all of the following conditions are met:
(A) Borrower fails to keep any promise or agreement made in this Security Instrument, including the promises to pay when due the sums secured.
(B) Lender sends to Borrower, in the manner described in Paragraph 13 above, a notice that states:
(i) The promise or agreement that Borrower failed to keep;
(ii) The action that Borrower must take to correct that default;
(iii) A date by which Borrower must correct the default. That date must be at least 30 days from the date on which the notice is given;
(iv) That if Borrower does not correct the default by the date stated in the notice, Lender may require immediate payment in full, and Lender or another person may acquire the Property by means of foreclosure and sale;
(v) That if Borrower meets the conditions stated in Paragraph 10 above, Borrower will have the right to have Lender's enforcement of this Security Instrument discontinued and to have the Note and this Security Instrument remain fully effective as if immediate payment in full had never been required; and
(vi) That Borrower has the right in any lawsuit for foreclosure and sale to argue that Borrower kept the promises and agreements under the Note and under this Security Instrument, and to present any other defenses that Borrower may have.
(C) Borrower does not correct the default stated in the notice from Lender by the date stated in that notice.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. **Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. Borrower will not be required to pay Lender for the discharge, but Borrower will pay all costs of recording the discharge in the proper official records.

01NY : 03/97    Page 5 of 6    PN

REEL 5 3 7 4 PG 1 6 8 9

**20. Agreements about New York Lien Law.** Borrower will receive all amounts lent by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that if, on the date this Security Instrument is recorded, construction or other work on any building or other improvement located on the Property has not been completed for at least four months, Borrower will: (A) hold all amounts which Borrower receives and which Borrower has a right to receive from Lender under the Note as a "trust fund"; and (B) use those amounts to pay for that construction or work before Borrower uses them for any other purpose. The fact that Borrower is holding those amounts as a "trust fund" means that for any building or other improvement located on the Property Borrower has a special responsibility under the law to use the amount in the manner described in this Paragraph 20.

**21. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

| | | | | |
|---|---|---|---|---|
| [ ] Condominium Rider | [ ] Graduated Payment Rider | [ ] Growing Equity Rider |
| [ ] Planned Unit Development Rider | [ ] Other(s) [specify] |

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_Premlall Nandkishur_ (Seal)
PREMLALL NANDKISHUR                     -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

- - - - - [Space Below This Line For Acknowledgment] - - - - -

STATE OF  NEW YORK                          QUEENS  COUNTY SS:

On this 11TH     day of  AUGUST, 1999          , before me personally came
PREMLALL NANDKISHUR

to me known and known to me to be the individual(s) described in and who executed the foregoing instrument, and HE        duly acknowledged to me that HE        executed the same.

My commission expires:               Notary Public _____

02NY : 02/97                Page 6 of 6

EMMA D FRANZESE
Notary Public, State of New York
No. 01FR5051129
Qualified in Queens County
Commission Expires October 30, 19__

L5483191h68

## CITY REGISTER RECORDING AND ENDORSEMENT PAGE
## - QUEENS COUNTY -
### (This page forms part of the instrument)

Block(s): 9809

Lot(s): 64

Title/Agent Company Name:

Title Company Number:

RECORD & RETURN TO:

NAME
BLAIR SERVICES OF AMERICA INC.
D/B/A Whitman Mortgages

ADDRESS
1121 Old Walt Whitman Road

CITY          STATE       ZIP
Melville      NY          11747

OFFICE USE ONLY — DO NOT WRITE BELOW THIS LINE

THE FOREGOING INSTRUMENT WAS ENDORSED FOR THE RECORD AS FOLLOWS:

Examined by (✓):                    2

City Register
Serial Number                 007996

Mtge Tax Serial No.

Mtge Amount               $

Taxable Amount            $

Exemption (✓)    YES ☐    NO ☐

Type:    [35058]   [288]   [OTHER _____]

Dwelling Type:   [1 to 2]  [3]  [4 to 6]  [over 6]

TAX RECEIVED ON ABOVE MORTGAGE ▼

| | |
|---|---|
| County (basic) | $ |
| City (Add'l) | $ |
| Spec Add'l | $ |
| TASF | $ |
| MTA | $ |
| NYCTA | $ |
| TOTAL TAX | $ |

Apportionment Mortgage (✓)   YES ☐   NO ☐

Joy A. Sobrow, City Register

Indexed By (✓):           Verified By (✓):         OTHER MTGE 0030     37.00

CSHR RECPT   DATE     TIME
Block(s) and Lot(s) verified by (✓):    3    Jan 24-00 8:54

Address           Tax Map ☐

Extra Block(s)         Lot(s)

Recording Fee    E 37

Affidavit Fee ...... (C)   $

TP-584/582 Fee  (Y)   $

RPTT Fee ...... (R)   $

HPD-A ☐          HPD-C ☐

New York State Real Estate Transfer Tax ▼
$
Serial Number ➡

New York City Real
Property Transfer Tax
Serial Number ➡

New York State
Gains Tax
Serial Number ➡

## RECORDED IN QUEENS COUNTY
## OFFICE OF THE CITY REGISTER
2000 Jan 20  8 5 12

2000 Jan 20  8 13
### Witness My Hand and Official Seal

City Register

PF-11 (1-86) - Assignment of Mortgage With Covenant - Individual or Corporation (Single Sheet)

CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT—THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY.

**KNOW THAT**

BLAIR SERVICES OF AMERICA INC.
d/b/a Whitman Mortgagee, a New York Corporation
1121 Old Walt Whitman Road
Melville, New York 11747

, assignor,

in consideration of ten dollars and other good and valuable consideration

dollars,

paid by

FLEET MORTGAGE CORP.
324 West Evans Street
Florence, South Carolina 29501

, assignee,

hereby assigns unto the assignee,

Mortgage dated the 11th day of  August  , 19 99 , made by Premlall Nandkishur

to  BLAIR  SERVICES OF AMERICA INC,
d/b/a Whitman Mortgagee
in the principal sum of $170,000.00   and recorded on the  15th  day of September 1999

in Liber  Reel 5374  of Mortgages, Page 1683 in the office of the  Clerk
of the County of Queens   covering premises

Being more particularly described in Schedule A attached hereto.

Having a property address of:     91-04 175th Street
Jamaica, NY  11432

Section:  43
Block:  9809
Lot:  64

This assignment is not subject to the requirements of Section 275 of the Real
Property law because it is an assignment within the Secondary Mortgage Market

TOGETHER with the bond   or note   or obligation   described in said mortgage   , and the money due and to
grow due thereon with the interest, TO HAVE AND TO HOLD the same unto the assignee and to the successors, legal
representatives and assigns of the assignee forever.

AND the assignor covenants that there is now owing upon said mortgage   , without offset or defense of any kind,
the principal sum of
One Hundred Seventy Thousand 00/xx----------------------------------------------dollars,
with interest thereon at 8.5   percentum per annum from the  11th   day of August   , 19 99

The word "assignor" or "assignee" shall be construed as if it read "assignors" or assignees" whenever the sense of
this instrument so requires.

IN WITNESS WHEREOF, the assignor has duly executed this assignment the    13th      day of
August    , 19 99

In PRESENCE OF

BLAIR SERVICES OF AMERICA INC.
d/b/a Whitman Mortgagee

By Frank B. Wigley
Frank B. Wigley, President

REEL 5 4 8 3 PG 1 6 8 4

STATE OF NEW YORK, COUNTY OF          ss:

On the      day of          19    , before me
personally came

to me known to be the individual    described in and who
executed the foregoing instrument, and acknowledged
that      executed the same.

STATE OF NEW YORK, COUNTY OF          ss:

On the      day of          19    , before me
personally came

to me known to be the individual    described in and who
executed the foregoing instrument, and acknowledged
that      executed the same.

STATE OF NEW YORK, COUNTY OF SUFFOLK          ss:

On the 13th day of August    19 99 . before me
personally came Frank B. Wigley
to me known, who, being by me duly sworn, did depose and
say that    he resides at No. 1121 Old Walt Whitman Rd.,
Melville, New York 11747
that    he is the    President
of BLAIR SERVICES OF AMERICA INC. d/b/a
    Whitman Mortgagee       , the corporation described
in and which executed the foregoing instrument; that    he
knows the seal of said corporation; that the seal affixed to said
instrument is such corporate seal; that it was so affixed by
order of the board of directors of said corporation, and
that    he signed h is name thereto by like order.

STATE OF NEW YORK, COUNTY OF          ss:

On the      day of          19    , before me
personally came
the subscribing witness to the foregoing instrument, with
whom I am personally acquainted, who, being by me duly
sworn, did depose and say that    he resides at No.
                  ; that    he knows
                  to be the individual
described in and who executed the foregoing instrument;
that    he, said subscribing witness, was present and saw
        execute the same; and that    he, said witness,
at the same time subscribed h    name as witness thereto.

Eugenia Lousais
Notary Public, State of New York
Registration #01LE5030418
Certified in Nassau County
My Commission Expires Jan. 22, 2001

## Assignment of Mortgage
With Covenant

Title No. ▮▮▮▮▮

BLAIR SERVICES OF AMERICA INC.
d/b/a Whitman Mortgages

TO
FLEET REAL ESTATE FUNDING CORP.

SECTION    43

BLOCK    9809

LOT    64

COUNTY OR TOWN Queens

RETURN BY MAIL TO:

WHITMAN MORTGAGEE
1121 Old Walt Whitman Road
Suite 300
Melville, New York 11747
Zip No.

Distributed by    TRW

TRW Title Insurance of New York, Inc.

RESERVE THIS SPACE FOR
USE OF RECORDING OFFICE

25 × 18

# TRIBOROUGH ABSTRACT INC.

Title No. ███████████

## SCHEDULE A - DESCRIPTION

All that certain plot, piece or parcel of land, situate, lying and being in the Borough and County of Queens, City and State of New York, known nd designated on a certain map entitled "Property at Eastwood, 4ᵗʰ Ward, Borough of Queens, Nov. 1907 by George H. Gifford" and filed in the Office of the Clerk (now Register) of the County of Queens on 12/18/07 as Map No. 587 as and by lots numbered 1 and 2 and part of 3 which said lots and part of lot are more particularly bounded and described according to said map as follows:

BEGINNING at the corner formed by the intersection of the Southerly side of 91ˢᵗ Avenue (formerly St. Albans Place) with the Westerly side of 175ᵗʰ Street (formerly Warwick Boulevard);

RUNNING THENCE Westerly along the Southerly side of 91ˢᵗ Avenue 117 feet;

THENCE Southerly parallel with 175ᵗʰ Street 51.25 feet;

THENCE Easterly parallel with 91ˢᵗ Avenue, 117 feet to the Westerly side of 175ᵗʰ Street;

THENCE Northerly along the Westerly side of 175ᵗʰ Street 51.25 feet to the corner, the point or place of BEGINNING.

SCHEDULE A - DESCRIPTION PAGE



| NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER | |
|---|---|
| This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this page will control for indexing purposes in the event of any conflict with the rest of the document. | |

| **RECORDING AND ENDORSEMENT COVER PAGE** | | **PAGE 1 OF 3** |
|---|---|---|
| **Document ID: 2007012500971001** | Document Date: 01-12-2007 | Preparation Date: 01-25-2007 |
| Document Type: ASSIGNMENT, MORTGAGE | | |
| Document Page Count: 2 | | |

| **PRESENTER:** | **RETURN TO:** |
|---|---|
| NATIONWIDE TITLE CLEARING | NATIONWIDE TITLE CLEARING |
| 2100 ALT 19 NORTH | 2100 ALT 19 NORTH |
| PALM HARBOR, FL  34683 | PALM HARBOR, FL  34683 |
| 727-771-4000 | 727-771-4000 |
| Jessica_lesinski@nwtc.com | Jessica_lesinski@nwtc.com |

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| QUEENS | 9809 | 64 | Entire Lot | 91-04 175TH  STREET |

**Property Type:** 1- 2 FAM WITH ATTCH GAR /OR VACANT LAND

**CROSS REFERENCE DATA**

QUEENS **Year:** 1999    **Reel:** 5374    **Page:** 1683

**PARTIES**

| **ASSIGNOR/OLD LENDER:** | **ASSIGNEE/NEW LENDER:** |
|---|---|
| WASHINGTON MUTUAL BANK | WELLS FARGO BANK, NA |
| 2210 ENTERPRISE DRIVE | 1 HOME CAMPUS |
| FLORENCE, SC  29501 | DES MOINES, IA  50328 |

**FEES AND TAXES**

| Mortgage | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES:  County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 0.00 | | | |
| Recording Fee: | $ | 47.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed      02-12-2007 13:31

City Register File No.(CRFN):
**2007000081307**

*Annette M. Hill*

***City Register Official Signature***



WAMU #: ▮▮▮▮
Wells#: ▮▮▮▮▮
Pool #: GNMA ▮▮▮▮▮

### ASSIGNMENT OF MORTGAGE

**FOR GOOD AND VALUABLE CONSIDERATION**, the sufficiency of which is hereby acknowledged, the undersigned, **WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK, FA SUCCESSOR BY MERGER TO WASHINGTON MUTUAL HOME LOANS, INC. SUCCESSOR BY MERGER TO FLEET MORTGAGE CORP., WHOSE ADDRESS IS 2210 ENTERPRISE DRIVE , FLORENCE, SC 29501,** (ASSIGNOR), by these presents does convey, grant, sell, assign, transfer and set over the described mortgage together with the certain note(s) described therein together with all interest secured thereby, all liens, and any rights due or to become due thereon to **WELLS FARGO BANK, NA, WHOSE ADDRESS IS 1 HOME CAMPUS , DES MOINES, IA 50328, ITS SUCCESSORS OR ASSIGNS,** (ASSIGNEE). Mortgage dated 08/11/1999 , made by **PREMLALL NANDKISHUR** to **BLAIR SERVICES OF AMERICA, INC., D/B/A WHITMAN MORTGAGEE** in the principal sum of $170,000.00 and recorded on 09/15/1999 in Liber 5374 page 1683 , Doc# in the office of the Registry of QUEENS County, N.Y.

Prop Addr: 91-04 175TH ST.
      JAMAICA, NY 11432
See Exhibit attached for Assignments, Modifications etc
This Assignment is not subject to the requirements of section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

**Dated: THIS 12TH DAY OF JANUARY IN THE YEAR 2007**
**WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK, FA SUCCESSOR BY MERGER TO WASHINGTON MUTUAL HOME LOANS, INC. SUCCESSOR BY MERGER TO FLEET MORTGAGE CORP.**

By _____
    MARY JO MCGOWAN   ASST. VICE PRESIDENT
               By _____
                  ELSA MCKINNON  witness

STATE OF FLORIDA COUNTY OF PINELLAS
THIS 12TH DAY OF JANUARY IN THE YEAR 2007 , before me, the undersigned, personally appeared MARY JO MCGOWAN , personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument, and that such individual made such appearance before the undersigned in PINELLAS County, State of FLORIDA

_____
MARIA LEONOR GERHOLDT  Notary Public
Residing in the county of PINELLAS
My commission expires: 05/26/2009

MARIA LEONOR GERHOLDT
Notary Public State of Florida
My Commission Exp. May 26, 2009
No. DD 0434621
Bonded through (800) 432-4254
Florida Notary Assn., Inc.

**Document Prepared By: J. Lesinski/NTC,2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152**
Property ID(S/B/L): B: 9809 L: 64
Return by Mail to:   Nationwide Title Clearing
                2100 Alt. 19 North
                Palm Harbor, FL 34683

▮▮▮▮▮    USB  WMASN ▮▮▮▮  CJ▮▮▮▮    $47.00

Loan No: ███████

### 'EXHIBIT A'

Assignments, Modifications, Consolidations Exhibit

ASSN: BLAIR SERVICES OF AMERICA, INC., D/B/A WHITMAN MORTGAGEE
TO FLEET MORTGAGE CORP., DT. 08/13/1999, REC.DT. 01/24/2000,
BK/PG 5483/1685



<table>
<tr><td colspan="2">

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City
Register will rely on the information provided
by you on this page for purposes of indexing
this instrument. The information on this page
will control for indexing purposes in the event
of any conflict with the rest of the document.

</td><td></td></tr>
</table>

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 3 |
|---|---|---|

**Document ID:** 2021060301221001   Document Date: 06-01-2021   Preparation Date: 06-03-2021
**Document Type:** ASSIGNMENT, MORTGAGE
**Document Page Count:** 1

| PRESENTER: | RETURN TO: |
|---|---|
| WELLS FARGO - LSA L2<br>733 MARQUETTE AVE<br>MINNEPOLIS, MN 55402 | WELLS FARGO - LSA L2<br>733 MARQUETTE AVE<br>MINNEPOLIS, MN 55402 |

## PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| QUEENS | 9809 | 64 | Entire Lot | 91-04 175TH STREET |

**Property Type:** 1-2 FAMILY DWELLING WITH ATTACHED GARAGE

## CROSS REFERENCE DATA

QUEENS      **Year:** 1999   **Reel:** 5374   **Page:** 1683
☒ Additional Cross References on Continuation Page

## PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| WELLS FARGO BANK, N.A.<br>1 HOME CAMPUS<br>DES MOINES, IA 50328 | UMB BANK, NATIONAL ASSOCIATION<br>120 SOUTH SIXTH STREET, STE 1400<br>MINNEAPOLIS, MN 55402 |

☒ Additional Parties Listed on Continuation Page

## FEES AND TAXES

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES:   County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 0.00 | | | |
| Recording Fee: | $ | 48.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

**RECORDED OR FILED IN THE OFFICE**
**OF THE CITY REGISTER OF THE**
**CITY OF NEW YORK**
Recorded/Filed      06-09-2021 13:22
City Register File No.(CRFN):
**2021000216129**

*City Register Official Signature*

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



| RECORDING AND ENDORSEMENT COVER PAGE  (CONTINUATION) | PAGE 2 OF 3 |

**Document ID:** 2021060301221001        Document Date: 06-01-2021        Preparation Date: 06-03-2021
Document  Type: ASSIGNMENT, MORTGAGE

**CROSS REFERENCE DATA**
QUEENS **Year:** 2000    **Reel:** 5483    **Page:** 1685
**CRFN:** 2007000081307

**PARTIES**

**ASSIGNEE/NEW LENDER:**
LVS TITLE TRUST XIII
120 SOUTH SIXTH STREET, STE 1400
MINNEAPOLIS, MN 55402

Recording Requested By:
WELLS FARGO BANK, N.A.

When Recorded Return To:

ASSIGNMENT TEAM
WELLS FARGO BANK, N.A.
MAC: █
PO BOX 1629
MINNEAPOLIS, MN  55440-1269

---

### CORPORATE ASSIGNMENT OF MORTGAGE

Queens, New York
"NANDKISHUR"

Date of Assignment: May 28th, 2021
Assignor: WELLS FARGO BANK, N.A. at  1 HOME CAMPUS, DES MOINES, IA  50328
Assignee: UMB BANK, NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS LEGAL
TITLE TRUSTEE FOR LVS TITLE TRUST XIII at 120 SOUTH SIXTH STREET, STE 1400, MINNEAPOLIS, MN
55402
Executed By: PREMLALL NANDKISHUR  To: BLAIR SERVICES OF AMERICA, INC. DBA WHITMAN MORTGAGEE
Date of Mortgage: 08/11/1999 Recorded:  09/15/1999  in Book/Reel/Liber: 5374 Page/Folio: 1683  In the County of
Queens, State of New York.

-Assigned Wholly by BLAIR SERVICES OF AMERICA, INC. DBA WHITMAN MORTGAGEE TO FLEET MORTGAGE
CORPORATION Dated: 08/13/1999 Recorded:  01/24/2000  In Book/Reel/Liber: 5483 Page/Folio: 1665
-Assigned Wholly by WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK, FA SUCCESSOR BY
MERGER TO WASHINGTON MUTUAL HOME LOANS, INC. SUCCESSOR BY MERGER TO FLEET MORTGAGE
CORP. TO WELLS FARGO BANK, N.A. Dated: 01/12/2007 Recorded:  02/12/2007  as Instrument No.:
2007000081307

Section/Block/Lot QUEENS/9809/64

Property Address: 91-04 175TH STREET, JAMAICA, NY  11432
    This Assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an
assignment within the secondary mortgage market.

    KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said
Mortgage having an original principal sum of $170,000.00 with interest, secured thereby, and the full benefit of all the
powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys
unto the said Assignee, the Assignor's interest under the Mortgage.

    TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the
terms contained in said Mortgage.  IN WITNESS WHEREOF, the assignor has executed these presents the day and
year first above written:

WELLS FARGO BANK, N.A.
On  6 / 1 / 2021

By: _Colin De Boer_
    Colin De Boer
Vice President Loan Documentation

STATE OF Minnesota
COUNTY OF Hennepin

On the  1st  day of  June  in the year  2021  before me, the undersigned,
personally appeared ____ Colin De Boer ____, Vice President Loan Documentation, personally
known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is(are)
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of
which the individual(s) acted, executed the instrument, and that such individual(s) made such appearance before the
undersigned in the County of Hennepin, State of Minnesota.

WITNESS my hand and official seal,

_Anne Schreiber_
    Anne M Schreiber
Notary Expires: 01/31/2025
Hennepin, Minnesota

ANNE M SCHREIBER
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES 01/31/2025

(This area for notarial seal)

PREPARED BY: WELLS FARGO BANK, N.A.

*SS1*SS1WFEM*05/28/2021 08:47:06 AM* WFEM02WFEM█ ████ NYQUEEN* NYSTATE_MORT_ASSIGN_ASSN *CDBWFEM*



| | | |
|---|---|---|
| **NYC DEPARTMENT OF FINANCE**<br>**OFFICE OF THE CITY REGISTER**<br><br>This page is part of the instrument. The City<br>Register will rely on the information provided<br>by you on this page for purposes of indexing<br>this instrument. The information on this page<br>will control for indexing purposes in the event<br>of any conflict with the rest of the document. | | |

| | | |
|---|---|---|
| **RECORDING AND ENDORSEMENT COVER PAGE** | | **PAGE 1 OF 6** |

**Document ID:** 2011122901074001     Document Date: 06-02-2010     Preparation Date: 12-29-2011
**Document Type:** MORTGAGE AND CONSOLIDATION
**Document Page Count:** 5

| **PRESENTER:** | **RETURN TO:** |
|---|---|
| FIRST AMERICAN TITLE<br>3 FIRST AMERICAN WAY<br>SANTA ANA, CA 92707<br>800-965-0363<br>lmts.recordingcustservice@firstam.com | FIRST AMERICAN TITLE<br>3 FIRST AMERICAN WAY<br>SANTA ANA, CA 92707<br>800-965-0363<br>lmts.recordingcustservice@firstam.com |

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| QUEENS | 9809 | 64 | Entire Lot | 91-04 175TH STREET |

**Property Type:** DWELLING ONLY - 1 FAMILY

**CROSS REFERENCE DATA**

QUEENS **Year:** 1999    **Reel:** 5374    **Page:** 1683

**PARTIES**

| **MORTGAGOR:** | **MORTGAGEE:** |
|---|---|
| PREMLALL NANDKISHUR<br>91-04 175TH STREET<br>JAMAICA, NY 11432 | WELLS FARGO BANK, N.A.<br>3476 STATEVIEW BLVD<br>FORT MILL, SC 29715 |

**FEES AND TAXES**

| Mortgage | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 209,692.94 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 55,139.53 | NYC Real Property Transfer Tax: | | |
| Exemption: | | 255 | | $ | 0.00 |
| TAXES: County (Basic): | $ | 275.50 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 551.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 137.75 | | | |
| MTA: | $ | 135.30 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 1,099.55 | | | |
| Recording Fee: | $ | 62.00 | | | |
| Affidavit Fee: | $ | 8.00 | | | |

**RECORDED OR FILED IN THE OFFICE**
**OF THE CITY REGISTER OF THE**
**CITY OF NEW YORK**
Recorded/Filed    01-13-2012 11:41
City Register File No.(CRFN):
       **2012000016219**

*Annette M Hill*

***City Register Official Signature***

This Document Prepared By:
**FELIZ CANTU**
**WELLS FARGO BANK, N.A.**
3476 STATEVIEW BLVD, MAC# X7801-03K
FORT MILL, SOUTH CAROLINA 29715

When recorded mail to: # █████████
First American Title
Loss Mitigation Title Services 1079.29
P.O. Box 27670
Santa Ana, CA  92799
RE: NANDKISHUR - MOD REC SVC

Tax Parcel No.: ██████████
_____ [Space Above This Line For Recording Data] _____

|  | FHA Case No. ██████████ |
|---|---|
| **State of New York** | Loan No. ██████████ |

# LOAN MODIFICATION AGREEMENT

This Loan Modification Agreement ("Agreement"), made this  **JUNE 2, 2010**
between   **PREMLALL NANDKISHUR**


("Borrower"), whose address is
**91 -04 175TH STREET**
**JAMAICA, NEW YORK 11432**
and
**WELLS FARGO BANK, N.A.**

("Lender"), whose address is  **3476 STATEVIEW BLVD, MAC# X7801-03K**
**FORT MILL, SOUTH CAROLINA 29715**
amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated
**AUGUST 11, 1999**      and recorded in **Book 5374, Page 1683**
**QUEENS**                          **COUNTY,   NEW YORK**                          , and (2) the Note, in
the original principal amount of U.S. $       **170,000.00**         , bearing the same date as, and secured by,
the Security Instrument, which covers the real and personal property described in the Security Instrument and
defined therein as the "Property," located at
**91 -04 175TH STREET**
**JAMAICA, NEW YORK 11432**
the real property described is located in  **QUEENS**                          **COUNTY, NEW YORK**
and being set forth as follows:


This property is or will be
improved by a one or two family
dwelling only

HUD Modification Agreement
First American Loan Production Services
First American Real Estate Solutions LLC
FALPS# NYHUDMOD Rev. 09-14-09                              Page 1 of 4

the real property described is located in **QUEENS**                    **COUNTY, NEW YORK**
and being set forth as follows:
**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF;**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of **AUGUST 1, 2010**               , the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $   **209,692.94**            consisting of the amount(s) loaned to the Borrower by the Lender, escrows and interest capitalized to date in the amount of U.S. $ **55,139.53**            .

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of the Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of           **5.000** %, from **JULY 1, 2010**          . The Borrower promises to make monthly payments of principal and interest of U.S. $    **1,125.68**       , beginning on the first day of AUGUST, 2010                , and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full.  If on **JULY 01, 2040**            (the "Maturity Date"), the Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, the Borrower will pay these amounts in full on the Maturity Date.
   The Borrower will make such payments at
**WELLS FARGO BANK, N.A.**
**3476 STATEVIEW BLVD, MAC# X7801-03K**
**FORT MILL, SOUTH CAROLINA 29715**
or at such other place as the Lender may require.

3. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in the Borrower is sold or transferred and the Borrower is not a natural person) without the Lender's prior written consent, the Lender may require immediate payment in full of all sums secured by this Security Instrument.
   If the Lender exercises this option, the Lender shall give the Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument.  If the Borrower fails to pay these sums prior to the expiration of this period, the Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on the Borrower.

4. The Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that the Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever cancelled, null and void, as of the date specified in Paragraph No. 1 above:

HUD Modification Agreement
FAND# WFNYHUDMOD-2.A Rev. 02-23-10                    Page 2                         *P    N*

(a)  all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

(b)  all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5.  If the Borrower has, since inception of this loan but prior to this Agreement, received a discharge in a Chapter 7 bankruptcy, and there having been no valid reaffirmation of the underlying debt, by entering into this Agreement, the Lender is not attempting to re-establish any personal liability for the underlying debt.

6.  Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.  Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.


_Premlall Nandkishur_                                           6-10-2010
**PREMLALL NANDKISHUR**                                          -Borrower


_____
                                                                -Borrower


_____
                                                                -Borrower


_____
                                                                -Borrower



**WELLS FARGO BANK, N.A.**

_____     Nedi B. Gulo
Name:                              VP of Loan Documentation        (Corporate Seal)
Its:                                                               -Lender



**HUD Modification Agreement**
FAND# WFNYHUDMOD-3 Rev. 08-24-05                   Page 3

_____ [Space Below This Line for Acknowledgments] _____

## BORROWER ACKNOWLEDGMENT

State of NEW YORK                )
                                 )  ss.:
County of _Queens_               )

On the _10_ day of _June_ in the year _2010_ before me, the undersigned, personally appeared
**PREMLALL NANDKISHUR** _____
_____
_____
_____,

personally known to me or proved to me on the basis of satisfactory evidence to be the individuals(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies); and that by his/her/their signature(s) on the instrument, the individuals(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_P Premlall Wandkishur_
(Signature and office of individual taking acknowledgement)

**GHANESS NARHARRY**
Notary Public, New York State
No. 01GH6071475
Qualified in Queens County
Commission Expires March 18, 20___

## LENDER ACKNOWLEDGMENT

State of _Minnesota_             )
                                 )  ss.:
County of _Hennepin_             )

On the _16th_ day of _June_ in the year _2010_ before me, the undersigned, personally appeared
_Nedi B. Grulo_ , the _V.P of loan documentation_ of
_Wells Fargo Bank, NA_ _____

a _____, on behalf of said entity, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the persons(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_signature_

**Mulunesh A. Tesfaye**
NOTARY PUBLIC
State of Minnesota
My Commission Expires 1-31-2015

(Signature and office of individual taking acknowledgement)

Printed Name _Mulunesh A. Tesfaye_                          (Seal)

**SEAL**

HUD Modification Agreement
First American Loan Production Services
First American Real Estate Solutions LLC
FALPS# NYHUDMOD-4 Rev. 09-14-09                    page 4 of 4

# EXHIBIT A

**BORROWER(S):   PREMLALL NANDKISHUR**

**LOAN NUMBER:**

**LEGAL DESCRIPTION:**

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND WITH THE
BUILDINGS AND IMPROVEMENTS THEREON ERECTED, SITUATE, LYING AND
BEING IN THE BOROUGH AND COUNTY OF QUEENS, CITY AND STATE OF
NEW YORK, KNOWN AND DESIGNATED ON A CERTAIN MAP ENTITLED,
"PROPERTY AT EASTWOOD, 4TH WARD, BOROUGH OF QUEENS, NOVEMBER,
1907 BY GEORGE H. GIFFORD" AND FILED IN THE OFFICE OF THE
CLERK (NOW REGISTER) OF THE COUNTY OF QUEENS ON 12/18/07 AS
MAP NO. 587 AS AND BY LOTS NUMBERED 1 AND 2 AND PART 3 WHICH
SAID LOTS AND PART OF LOT ARE MORE PARTICULARLY BOUNDED AND
DESCRIBED ACCORDING TO SAID MAP AS FOLLOWS: BEGINNING AT THE
CORNER FORMED BY THE INTERSECTION OF THE SOUTHERLY SIDE OF
91ST AVENUE (FORMERLY ST. ALBANS PLACE WITH THE WESTERLY SIDE
OF 175TH STREET (FORMERLY WARWICK BOULEVARD); RUNNING THENCE
WESTERLY ALONG THE SOUTHERLY SIDE OF 91ST AVENUE 117 FEET;
THENCE SOUTHERLY PARALLEL WITH 175TH STREET, 51.25 FEET;
THENCE EASTERLY PARALLEL WITH 91ST AVENUE, 117 FEET TO THE
WESTERLY SIDE OF 175TH STREET; THENCE NORTHERLY ALONG THE
WESTERLY SIDE OF 175TH STREET 51.25 FEET TO THE CENTER, THE
POINT OR PLACE OF BEGINNING. APN:BLOCK 9809 LOT 64

ALSO KNOWN AS:  91 -04 175TH STREET, JAMAICA, NEW YORK 11432

FAND# EXHIBIT A  Rev. 07-03-07